JANE I. SKELLEY ET AL. *v.* ARTHUR R. SKELLEY.

May Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed October 19, 1914.

*Exceptions—Sufficiency—Executors and Administrators—Proceedings for Settlement—Evidence—Equitable Estoppel.*

Where the strict bill of exceptions allowed defendant shows no exception taken by him, but the judgment order is referred to and made a part thereof, and at the foot of the judgment order the trial court noted "exceptions by each party," it is held on review that defendant took and was allowed an available exception to the judgment.

On settlement of an administrator's account, inconsistent findings of the commissioner considered and *held* that the trial court was warranted in disregarding the finding that the other heirs consented to the administrator's conducting decedent's business and using the property as a common fund for the benefit of himself and the other heirs without settlement in probate court.

Where heirs frequently insisted that the administrator should settle the estate, and finally petitioned to compel him to do so, they were not, as matter of law, estopped to deny that they consented to the administrator conducting decedent's business without settlement in probate court, and the use of the property as a common fund for the benefit of the heirs, merely because they had some of the proceeds of the business so conducted.

APPEAL by plaintiffs from the judgment of · the probate court allowing the account of defendant as administrator of the estate of his father, John Skelley. Heard on the report of a commissioner and plaintiffs' exceptions thereto, at the January Term, 1914, Grand Isle County, *Miles*, J., presiding. Judgment that the defendant account as stated in the opinion. The defendant excepted. The opinion states the case.

*Furman & Webster* for the plaintiffs.

*Jed P. Ladd, Ezra Horton,* and *V. A. Bullard* for the defendant.

HASELTON, J.   This was an appeal by the plaintiffs from the judgment of the probate court within and for the district of Grand Isle allowing the account of the defendant, Arthur R. Skelley, as administrator of the estate of his father, John Skelley, deceased.   The case was heard in the county court upon the report of a commissioner and exceptions thereto by the plaintiffs, and judgment was rendered against the defendant and that he account for the sum of $1,531.47 in addition to the property of the estate shown to be in his hands by certain items of the commissioner's report.   These items will hereinafter be referred to.   The case comes here on a bill of exceptions brought by the defendant.   It does not appear on the face of the printed bill that the defendant took any exception.   But the judgment order is referred to and made a part of the bill of exceptions, and at the foot of the judgment order the court noted "exceptions by each party"; and as the court allowed the defendant a bill of exceptions showing no exception by him otherwise than by this reference we conclude from the entry order above referred to that the defendant took and was allowed an exception to the judgment on the report, and that this exception is available. Such is the claim of the defendant, and it is not controverted by the plaintiffs.

John Skelley died July 17, 1898, leaving a widow, Jane I. Skelley, three daughters, Winifred Skelley, Florence Folsom, and Gertrude Murdock, and one son Arthur R. Skelley, the defendant herein.   The estate consisted of a store, house and farm in Alburgh, and of some other property.   On August 30 following the death of their father, Arthur R. Skelley and Florence Folsom were appointed administrators of the estate.

Florence Folsom resided in Massachusetts after her appointment and did not actively participate in the administration of the estate.

The commissioner makes the following finding: "Arthur R. Skelley handled all the money for the administrators, and whatever balance the court may hold to be due the administrators is payable to Arthur R. Skelley, and whatever liability the court may hold to be against the administrators is against Arthur R. Skelley."   This finding is not questioned.

The intestate had been ill for about two years before his death, and during that time Arthur had managed the store for his father and had assisted in the management of the farm and other property of the estate. Winifred, and sometimes Gertrude, has assisted in the management of the store business.

Upon the death of the father the store was closed until the day after the funeral, when it was re-opened and the business continued as before, the books not being balanced, the accounts remaining current, and the sign on the store remaining unchanged. New stock was purchased and old debts in the store business were paid before any appraisal of the property was made, and commercial accounts were paid without any allowance by the commissioners appointed to allow and adjust claims. The new stock was mixed with the old. The widow continued to keep house. Before the death of her husband she had had the avails of milk checks part of the time, and after his death she continued to receive them, except a few checks in certain years, and she received goods out of the store to an amount equal to the value of the board of Arthur, the administrator. Winifred continued to work in the store for four years, and Arthur managed the business of both the farm and store and lived at the old home with his mother and Winifred. In the summer time the married daughters, Florence and Gertrude, visited at home for about a month annually. No one paid board. Goods were purchased for the store in the name of the estate, and Arthur intended to carry on the business in the name of and for the estate, and the business was carried on, practically in the same way as it had been before the death of John Skelley, until sometime in 1909, a period of about eleven years, when the store was closed by attachment for debts contracted by the administrators. In January, 1910, the administrators resigned, and, following the resignation of Arthur, the probate judge removed him for failure to file a new bond. The plaintiff, H. W. Marvin, was therefore appointed administrator *de bonis non* and is now acting as such.

After stating how the business was carried on the commissioner makes the following finding: "No express agreement was entered into between the heirs that said business should be run as aforesaid, but I find that all of the heirs fully understood that it was being so run, and all of them participated in it in the manner following: The widow took a part of the milk

checks from the farm, and groceries from the store, and lived in the house. Winifred lived at home for four years after her father's death. Florence and Gertrude visited at home annually for about a month at a time. Arthur and Jane I. lived all of the time at home, and the avails of the farm and store supplied the house. Florence, Gertrude and Winifred all pledged the credit of the estate for goods bought in Boston at various times for their personal use excepting certain curtains which Winifred purchased for the store, but I find that these latter accounts were not paid by the administrator, and were paid by the respective girls. The widow testified, 'We thought there ought to be a settlement. Those were my wishes from the very first, that each one have their share; to let it run together and then have a division afterwards.' And I find that that correctly stated the position of all the heirs. Moreover, with respect to the payment of debts not presented to commissioners, I find that they all participated in this by signing a note to Winifred Skelley for the debt of the estate to her, amounting to $500, and at various times after the first year Winifred accepted payments from the administrator upon this debt. From which facts I find that there was an implied agreement that the business should be run, purchases made and debts paid in the manner done by the administrator, Arthur R. Skelley."

The commissioner refused to strike out the words which indicated that his finding of an implied agreement was based solely on the facts recited in the above quotation and refused to insert words indicating that the implied agreement was found to have been made at or about the time of the decease of John Skelley. It is suggested in argument that the finding of an implied agreement must be taken to relate to the running of the business during the first year of the administration only; but the facts on which the finding is based are, some of them, quite inconsistent with this claim, as is also the language of the finding itself.

Having made the finding with regard to an implied agreement and enumerated the subordinate facts upon which it was based, the commissioner makes further findings as follows: "About a year after the decease of Mr. Skelley, the other heirs began to request Arthur to settle up the estate, and each year afterwards requested him to settle the estate, and I find that they wrote the judge of probate court letters upon this subject;

that at times Arthur offered to resign and they refused to have him resign, and continued to request him to settle the estate, that the judge of probate court wrote him in 1906 or saw him, requesting him to settle this account, and that he spent two days figuring on the account but did not complete the same, and no account was then filed; that matters ran along in this way until a petition was brought by all of the other heirs for an order upon the administrator to settle his account, and give a new bond, which was served on Arthur November 23, 1909.''

These facts, or some of them, had a tendency to show that there was not such an implied agreement as to the running of the business as the commissioner found, and because they were all excluded from consideration in the making of that finding, it was necessary, or at least warrantable, for the chancellor to disregard the finding with respect to an implied agreement, and the decretal order shows that he did in fact disregard it.

The commissioner states the account in one way if the court holds as matter of law that the continuation of business by the administrator was not improper and the time of settlement waived so that the delay in that regard was not wrongful, or if the court holds as a matter of law that the plaintiffs are estopped by reason of the knowledge of the administrator's doings and their participation in the use of the avails of the estate to the extent and in the manner found.

The commissioner states the account in another way if the court holds that under the facts found the continuation of business by the administrator was not lawful, that the time of settlement was not waived and that the delay therein was wrongful.

The county court held that the account as stated in the latter way was correct, except that it allowed the administrator a further credit of $521.98 of which the administrator, the excepting party cannot complain.

The defendant says in the brief in his behalf that, although he acted beyond his authority and did what the law furnishes no excuse for so doing, still all he did was with the knowledge and acquiescence of the heirs and all other persons interested in the estate. But the facts which we have recited did not show acquiescence, waiver or estoppel as matter of law.

The brief further says in his behalf that all he did was under and by virtue of an understanding and agreement with the heirs and other persons interested in the estate, referring to

the implied agreement found by the commissioner which, for the reasons already stated, it was proper for the county court to disregard, as in fact it did.

The judgment of the county court was that the defendant account for the sum of $1,531.47 in addition to the property of the estate shown to be in his hands by items one to eight inclusive on page nineteen of the commissioner's report.

These items appear to be: home lot and buildings $900, store lot and barn $450, blacksmith shop and lot $150, twenty acre lot $400, Smith lot of eleven acres $110, farming tools and chattels of farm $477.45, certain stock in the store $400, one-half interest in real estate owned by William and John Skelley $728.

*The judgment of the county court is affirmed. Let the result be certified to the probate court.*